owner. "Anything that affects or limits the free use and enjoyment of one's property, or of the easements or appurtenances thereto, is a deprivation or taking of property within the meaning of the constitution, and the owner has the right to have a constitutional tribunal pass upon the question as to whether he has been deprived of it, and, if so, what compensation he is entitled to therefor." Same case last cited, and cases there cited. The provision of the constitution referred to is article 1, § 7:

"When private property shall be taken for any public use, the compensation to be made therefor, when such compensation is not made by the state, shall be ascertained by a jury or by not less than three commissioners appointed by a court of record, as shall be prescribed by law."

We think the decision under this statute by the grade-crossing commissioners (certainly when against the property owner) is not final and conclusive upon the property owner, but is subject to review, and that, as said by the learned trial justice:

"The power to decide, given by a statute, unless limited thereby, necessarily carries with it the duty to investigate in the manner and by the methods usually employed for ascertaining any fact or facts to be judicially declared; also insure to the party or parties interested in such decision the right to such a record, unless otherwise provided, as will enable him to review such decision."

It will be observed that the question is not one as to the amount of compensation, or whether there was, as a matter of fact, any injury for which the relator was entitled to compensation, but, in the language of the statute, the property may be injured, etc.

Our conclusion is that the judgment and order appealed from should be affirmed, with costs. All concur.

---

(63 App. Div. 532.)

### STAJAKOWSKI v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. July 23, 1901.)

MASTER AND SERVANT—EXISTENCE OF RELATION.

Plaintiff, an employé of a locomotive works, was injured in its yard by a car set in motion by defendant's engine. On request, defendant's engine went to the yard to take out empty cars belonging to defendant. The desired cars were standing a number of cars below the flat car on which plaintiff was loading a cylinder, and the train crew were told by the yard foreman to wait until the cylinder was loaded before getting the cars. The train crew, without waiting, coupled the engine on two cars, and pushed them down the track against two empty cars, which ran against the flat car, injuring the plaintiff. The train crew intended to switch these four cars to another part of the yard. Held, that the train crew at the time of the accident, in failing to wait as directed by the yard foreman, were acting as servants of the defendant, and not as the servants of the locomotive works.

Appeal from trial term, Erie county.

Action by Andrew Stajakowski against the New York Central & Hudson River Railroad Company. From a judgment of the supreme court in favor of plaintiff, and from an order denying a motion for a new trial on the minutes, defendant appeals. Affirmed.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Charles A. Pooley, for appellant.
Eugene M. Bartlett, for respondent.

WILLIAMS, J. The judgment and order appealed from should be affirmed, with costs. The action was brought to recover damages for injuries to the plaintiff alleged to have been caused by the negligence of the defendant. The plaintiff was an employé of the Brooks Locomotive Works, at Dunkirk, N. Y. The defendant had a connection with the locomotive works yard by a siding extending from its tracks. An engine and crew of the defendant were in the yard of the locomotive works to get some cars out, and plaintiff received his injuries by reason of the negligence of the crew of that engine. Practically, the only question we are called upon to consider upon this appeal is whether at the time of the accident the engine crew were the servants of the defendant, so as to make it liable for plaintiff's injuries, or whether they were the servants of the locomotive works, who are not defendants in this case. The facts upon which we are to pass must be regarded as settled by the evidence, and, so far as they were in dispute on the trial, by the verdict of the jury; and they were, in brief, as follows: The locomotive works yard was inclosed by a substantial fence. The locomotive works had no engines of its own. Three different railroad lines had access to the locomotive works yard for reception and delivery of freight, and taking out their respective cars after they were unloaded. When an engine and crew came to the yard, they had to procure the gate to be opened by a tender who had charge thereof. When they went to take out their own cars, they went in and took them, if they were not obstructed by other cars. If they were so obstructed, they pulled out the other cars, took their own cars, and then replaced the cars pulled out, wherever directed by the foreman of the yard. On the occasion in question the defendant had been notified the night before that there were some empty cars of theirs in the yard, and requested to send an engine in the morning and take them away. The engine and crew were sent to the yard in the morning in response to that request. On arriving at the yard, the gate was found closed. The conductor left the engine, and went into the yard, and procured the gate to be opened. The engine then entered the yard and stopped. The conductor went down the yard, looking for the foreman. He found him at the flat car where plaintiff and others were employed in loading a cylinder, and was told by the foreman that when they had finished loading the cylinder upon the flat car the engine and crew could have the track for the purpose of taking out the empty cars they had come for. Thereupon the engine crew, without waiting until the cylinder was loaded, coupled the engine upon two loaded cars near the gate, and then pushed these two cars down the track against two box cars on the same track. The track was slippery, and the two box cars were unintentionally pushed against the flat car upon which the cylinder was being loaded, and the plaintiff was injured thereby. The empty cars which the defendant's engine and crew desired to take out were upon the same track, some dis-

tance below the flat car, on which the cylinder was being loaded. The engine and crew intended to pull out and place upon another track the two loaded and two box cars, and then, when the flat car was ready, draw that out and place it where the foreman directed, and then they could reach their own empty cars and take them out. They should have obeyed the directions of the foreman to wait until the loading of the cylinder was completed; but they acted of their own volition, without having, as yet, placed themselves under the direction or control of the yard foreman. There was a conflict in the evidence as to what the yard foreman said to the engine conductor in the yard. The conductor claimed that the foreman told him to draw out the four cars,—two loaded and two box cars,—and place them in another part of the yard, while they were loading the cylinder in the car, so that when the accident occurred the engine and crew were engaged in doing shifting for the locomotive works under the direction of the yard foreman. This conflict was submitted to the jury, and the court charged that, if the conductor's claim was well founded, there could be no recovery, but if the occurrence took place as the yard foreman stated, and as plaintiff claimed, then there could be a recovery. In other words, the engine and crew had come to the yard by request of the locomotive works; on their arrival, plaintiff claimed they were told to wait there until the cylinder was loaded on the flat car before they did anything; and that they nevertheless, before the yard foreman had assumed control over their work in the yard, and of their own volition, proceeded to move the cars, and caused the injuries to plaintiff in so doing; while the defendant claimed that the moving of the cars and the injuries to the plaintiff were acts done after the yard foreman had assumed control over them, and in carrying out his instructions. In the former case the defendant would be liable, and in the latter case it would not. Such was the charge of the court, and we think the charge was correct. It cannot be true that the locomotive works became responsible for the acts of the engine crew, as its servants, the moment they passed the gates and entered the yard, and before the foreman assumed any control over them, or gave them any directions except to do nothing, but to wait till they finished loading the flat car.

The case of McInerney v. President, etc., 151 N. Y. 411, 45 N. E. 848, relied upon by the defendant here, merely held that while engaged in the shipper's work the engine crew were, in law, his servants, and the railroad company was not liable for a personal injury sustained by a regular employé of the shipper, caused by the omission of the engine crew to notify such employé of their intention to couple a car about which he was working. In that case the engine crew had entered upon the performance of the shipper's work, under the direction of his foreman, when the accident occurred. In this case they had not entered upon any work for the locomotive works, under its foreman's direction. He had not yet assumed control of the crew and engine. He had merely told them he was not yet ready for them, and directed them to wait until the flat car was loaded. The crew, of its own volition, acting for it-

self, and not yet having undertaken its work for the locomotive works, did the acts which caused plaintiff's injuries. In so doing they were not acting as the servants of the locomotive works. They were in the employ and the servants of their regular employer, the defendant, and the defendant was liable for their acts. The following passage in the opinion in the McInerney Case shows just the scope of that decision:

"Willard was the master on that occasion, and the plaintiff was in his employ. The track belonged to Willard, and was built upon his property. The engine crew of the defendant came upon Willard's track at his request, to perform a service for him; and during the time they were thus engaged, and acting under his orders and subject to his control, they were, in law, his servants."

The defendant sought to show in the case we are considering that the engine crew had actually entered upon its work for the locomotive works, under the direction of its yard foreman, when plaintiff's injuries were caused by them. If they had, the court charged, there was no right to recover. The plaintiff claimed, however, and the jury found, that the engine crew had not entered upon the work for the locomotive works, but, before the foreman assumed control of them, they, of their own volition, performed the negligent acts which caused plaintiff's injuries. Upon this finding the jury very properly, under the charge of the court that they might do so, rendered the verdict for the plaintiff.

We conclude that the judgment and order appealed from should be affirmed, with costs. All concur.